RUTH ROSENBLUM, Appellant, *v.* HARRIS, UPHAM & CO., INC., Respondent.

First Department, February 8, 1972.

*Joel Schonfeld* of counsel (*Schonfeld, May & Karduna,* attorneys), for appellant.

*Charles L. Trowbridge* of counsel (*Michael J. McAllister* with him on the brief; *Gifford, Woody, Carter & Hays,* attorneys), for respondent.

McGIVERN, J. P. The basic facts are: On June 16, 1969, the plaintiff's son opened an account with the defendant brokerage house and, representing that his mother owned 1,700 shares of Acme Missile & Construction Corp., requested the broker to sell the same. In fact, she owned no such stock. The defendant broker, however, executed the sale at $5 per share, noted its commission, and credited the plaintiff with the proceeds of over $8,200. The settlement date came and passed, with no delivery

of the stock, and notwithstanding, the broker rendered monthly statements through September, 1969, still crediting the plaintiff with the proceeds.

Come September 3, 1969, and the broker telegraphed his would-be client, the plaintiff, to the effect that unless the stock was delivered on the following day, he would be " bought in ". The stock not being tendered, the broker did just that, buying the stock at $2.75 per share, and realizing a profit of $3,434 on the transaction. Both parties claim this credit.

After a nonjury trial in the Civil Court of the City of New York (PECORA, J.), judgment was awarded in favor of defendant, on the main ground that the broker's agency ended when the plaintiff failed to deliver the securities. Appellate Term (LUPIANO, J., dissenting) found that it was the plaintiff's fraud which rendered the agency *nudum pactum*, and that the courts should not countenance a fraud. The dissenting Justice reasoned, however, that the broker was an agent throughout, proclaimed itself as an agent, and collected commissions in the role of agent; and this agency was never terminated.

We agree with the dissenting Justice of the Appellate Court. No elaboration of rationale is required here, as the various theories were well explicated in a set of superior opinions by both the Civil Court and Appellate Term. It is our considered judgment that the defendant broker should not receive a bonanza when it is clear that from the Alpha to the Omega of these transactions, it was an agent and collected commissions for its limited role as such. Further, it was the defendant broker who unlawfully extended credit to the customer, waived the delivery date, and violated Regulation T, adopted by the Board of Governors of the Federal Reserve System (Code of Fed. Reg., tit. 12, § 220.4). But, as held by this court in *Myer* v. *Shields & Co.* (25 A D 2d 126), the customer's right of action is not misaffected by his participation in a transaction which offends the margin requirements, as the dominant purpose of the rules is the protection of customers, not the broker. Thus, the plaintiff is not disabled from suing, and the defendant may not retain a windfall, carried on its books as a credit to the plaintiff, and which was, in large measure, the result of its own transgression of the regulations, and from transactions during which, at all times, it was the plaintiff's agent.

Accordingly, the order of the Appellate Term and the judgment of the Civil Court should be reversed, on the law, with costs and disbursements to plaintiff-appellant, the judgment of the Civil Court vacated and judgment entered in favor of plain-

tiff-appellant, with costs, for the sum standing to her credit, i.e., $4,819.50.

KUPFERMAN, J. (concurring). There is no need to discuss right and wrong here because the situation is extremely simple. Neither party behaved in any way as to warrant the exaction of a penalty or the granting of a windfall. It was perfectly normal for the broker to wait over the summer for delivery when the customer promised that a search in Florida would bring forth the stock.

The broker was an agent throughout, and this is confirmed in that, if the stock had been bought in at a loss, the broker would have looked to the customer for the difference. Only if the customer's offense was so heinous that the court in good conscience would not countenance it, could the result be other than that the plaintiff recover judgment.

NUNEZ, MURPHY and CAPOZZOLI, JJ., concur with McGIVERN, J. P.; KUPFERMAN, J., concurs in an opinion.

Order, Appellate Term of the Supreme Court, First Department, entered on May 17, 1971, and judgment of the Civil Court, New York County, entered on January 14, 1971, unanimously reversed, on the law, with $50 costs and disbursements of this appeal to appellant, the judgment of Civil Court vacated, and judgment entered in favor of plaintiff-appellant, with costs, for the sum standing to her credit, i.e., $4,819.50.